Let the petitioner be discharged, and recover his costs.
Cited: In re Wyrick, post, 376, 378; In re Bradshaw, post, 382; In reSowers, post, 387; McDonald v. Morrow 119 N.C. 672.
The facts are: Nicholson is 33 years of age, is a miller and millwright, skilled in both trades. He was enrolled as a conscript 8 July, and was ordered into service 15 July, 1862. Between 8 and 15 July he applied to the commandant of conscripts for a special exemption as a miller; this was refused. He, nevertheless, failed to report, and continued at his trade as a miller, as he had habitually done for many years before. In August, 1862, he went into the armory of Lamb Co. expecting to be detailed, but left before the detail was made and set in to work for one Shipman, as a millwright, where he worked until 1 January, 1863, when he went to Virginia, and set to work as a millwright for one Lamb, where he remained actually employed at his trade until March, when, coming into this State on a visit to his family, he was arrested as a recusant conscript. He has made the affidavit as required by the exemption act.
In the matters of Mills, a shoemaker, and Angel, a wagonmaker, I decided that the exemption act, 11 October, 1862, applied as well to the conscription act of April as to conscription act to September. I see no reason to change my opinion. The act adds to the list of exemptions contained in the exemption act of April; uses general words applicable to both conscription acts, "all shoemakers, tanners," etc.; makes no distinction between persons under or over 35, and repeals the former exemption act, showing obviously that the intention was in reference to the conscription act of April, to put the last exemption act in place of the act repealed, and make one exemption act answer for both conscription acts. If this be not so, there are no exemptions between the ages of 18 and 35, and governors of the States, judges, members of the Legislature, etc., under the age of 35, are liable as conscripts; nay, all persons, although "unfit for military service by reason of bodily or mental infirmity," are liable as conscripts, if under the age of 35. Such a construction is inadmissible. It was said by Mr. Scott, on the argument, "This difficulty is met by the power given to the President to make special exemptions." But it could not have been the intention to make governors, judges, and members of the Legislature dependent upon the pleasure of the President. The object was to entitle them to exemption by law, and not by favor.
It was also said, if the act applies to the conscription act of April, it must have a retroactive effect, and its construction will present many difficulties. That is true; but when the clear intention of the lawmakers that the one act should apply to the other appears, it becomes the duty of the judges to adopt such a construction as will make them fit in the best way they can be put together.
In the matters of Mills and Angel it was not necessary to fix on the time when the act requires the party to be actually employed at his trade, for they were not ordered into service until after its passage, and were, without default, actually employed at their trades, both at the passage of the act and when ordered into service, and, taking either date as "the time," were entitled to exemption.
In this case the point is directly presented. If "the time" be when the party is ordered into service, then Nicholson was entitled to exemption, and his subsequent conduct in keeping out of the way and going to Virginia to avoid an arrest does not prejudice his right, it being induced by the unauthorized act of Government officers in attempting to arrest him, although the more commendable course would have been to insist openly on his right. If, however, "the time" be when the exemption act passed, then he was liable as a conscript, and although actually employed at his trade, cannot claim, for that reason, to stand on higher ground in this respect than if he had been in the army, because of the maxim. "No man shall take advantage of his own wrong."
The clause under consideration does not (except indefinitely, in the proviso) refer to the time when the person claiming to be exempted must be actually employed at his trade. It makes no exception of persons then in service or who had been ordered into service, and puts the stress on the fact of actual employment. It is in these words: "All shoemakers, tanners, etc., skilled and actually employed in the said trades, habitually engaged in working for the public, and whilst so actually employed, provided said persons shall make oath in writing that they are so skilled and actually employed at the time, at their regular vocation, in one of the above trades, which affidavit shall be only prima facie evidence of the facts therein stated."
In reference to the conscription act of September, it is clear "the time" is when the party is ordered into service; that being the time when the affidavit is called for to enable him to claim exemption. But in reference to the conscription act of April, it is not so easy to fix the time. The difficulty arises from the fact that the exemption act is applicable to both conscription acts, one of which was passed six months before the other, and after it had, in a great measure, been carried into effect. In my opinion, "the time" is the same in reference to the act of April as in reference to the act of September, to wit, when the party is ordered into service. Had the time of the passage of the act been intended, it is reasonable to presume that the words would have been "now actually employed," as in the clause just preceding, in respect to physicians, "atthis time." The policy of exempting shoemakers, etc., being not to favor the individual, but to subserve the public interest, which was greatly prejudiced by taking tradesmen from their occupations, it was immaterial whether the tradesman was under or over the age of 35 years.
The material inquiry is, Was he working for the public at the time? which naturally refers to the time when he was called off from his trade — taking the distinction between volunteers, who of their own accord had quit their trades, and conscripts, who had been taken from their trades by act of law, and should be considered in reference to the intended exemption as still at their trades. This construction is called for by the rule, "the same words in the same statute ought to have the same meaning," and as in reference to the act of September, the meaning certainly is when the party is ordered into service, the same words cannot have a different meaning in reference to the act of April. Had it not been the intention to include all shoemakers, etc., without regard to age, this result would have been avoided by adding the words: "Provided, no shoemaker, etc., shall be exempted who is now in service, or has been ordered into service." So the question is narrowed to this, Can the courts add these words to the act? I see no ground on which the omission, if it be one, can be supplied by construction. It was urged by Mr. Scott that the public interest required as many soldiers as could be raised; therefore an intention to exempt any who were already in service, or who ought to have been in service, can only be inferred from plain and direct words. This was met by Mr. Gilmer with the suggestion that the public interest required that tradesmen should not be taken from their vocations, and that those who have been taken off by act of law should be allowed to return; as it was seen the public interest had been prejudiced, and it was a matter of difficulty for the people to get a pair of shoes or have a plow sharpened, etc., and that the benefit of a matter of doubt, if there be one, arising from a want of precision in an act of Congress, should be given to the citizens rather than to the Government.
Giving to these suggestions proper consideration, the inquiry, whether the intention was to consult the public interest in the army or at home, can only be answered by the words used. The clause under consideration does "in plain and direct words" exempt all shoemakers, etc., and does not except those who are in the army, or ought to have been in the army, at the passage of the act, and the indefinite words in the proviso, "actually employed at the time," cannot, by any recognized rule of construction, make the exception.
And it does "in plain, direct words" repeal the exemption act of April. This fact has an important bearing on the question of construction, for if it was not the intention that the additional exemptions should apply to persons under 35, why repeal that act? And if such was the intention, the only way in which it can be carried out, and the exemption act be made to fit the conscription act of April (with a few exceptionable cases likeMills and Angel) is to give it relation to the time when the party was ordered into service and taken from his trade.
Whether shoemakers, etc., who were in service as conscripts when the act passed can now claim exemption, or would be taken to have waived the right, by acquiescence, in afterwards receiving pay, etc., is not the question now presented.
Nicholson certainly has done no act that can amount to a waiver of his right; he has not received the State bounty, has received no pay, and has done nothing from which acquiescence can be implied.
It is considered by me that Nicholson is entitled to exemption, and that he be forthwith discharged, with leave to go wherever he will. It is also considered that Lieutenant Anderson (the enrolling officer) pay the costs of this proceeding, allowed by law, to be taxed by the clerk of the Superior Court of Guilford County, according to the statute in such a case made and provided.
This clerk will file the papers in this proceeding among the papers in his office, and give copies to Nicholson and Lieutenant Anderson.
At Richmond Hill, 4 May, 1863. R. M. PEARSON, Ch. J. S.C. *Page 32